IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCIO BARRERA, individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DNJ INTERMODAL SERVICES, LLC <br><br> Defendant. | |

## **COMPLAINT**

1. This is an action brought on behalf of current and former Illinois drivers challenging Defendant DNJ Intermodal Services, LLC ("DNJ") unlawful practices of misclassifying drayage drivers as independent contractors instead of as employees, unlawfully deducting amounts from employees' compensation, and failing to pay employees at least minimum wage during each workweek.

2. Plaintiff Lucio Barrera ("Barrera") and the group of similarly situated plaintiffs (the "putative class") allege that as a result of Defendant's misclassification, illegal deductions were made from their wages in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. § 115/9, and Defendant failed to pay its employees at least federal minimum wage for all hours worked, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206.

3. Barrera also individually alleges the state law tort of conversion against DNJ.

**THE PARTIES**

4. Barrera is an adult resident of Chicago, Illinois. He has provided drayage services for DNJ as a driver in the State of Illinois from approximately September 2013 until January 2015.

5. Plaintiff brings this action on behalf of a putative class of similarly-situated individuals, namely, all persons who purported to enter into a "Independent Contractor" agreement or similar contract ("Contract"), individually or on behalf of another entity, and personally provided drayage services as drivers pursuant to that Contract for DNJ in the State of Illinois at any time during the relevant statutory period, and who were not classified as employees of DNJ.

6. Plaintiff and the members of the Plaintiff class are "employees" within the meaning of the IWPCA and FLSA.

7. Defendant DNJ is a Tennessee corporation. DNJ does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

8. DNJ is subject to the provisions of the IWPCA and the minimum wage provisions of the FLSA, and is an "employer" within the meaning of those statutes.

**JURISDICTION**

9. This Court has jurisdiction of this action under the provisions of the FLSA pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10. The unlawful employment practices described herein were committed within the State of Illinois, at DNJ's facilities located in Will County. Accordingly, venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b

11. The Court has personal jurisdiction over Plaintiff and the class he seeks to represent because they are citizens of the State of Illinois and/or work in the State of Illinois.

12. The Court has personal jurisdiction over Defendant DNJ because it does business in the State of Illinois, registered with the Illinois Secretary of State, and its conduct in the State of Illinois underlies all claims in this suit.

## STATEMENT OF FACTS

13. DNJ is an intermodal trucking and container drayage company that provides intermodal logistics and transportation services to clients in Chicago, IL and the surrounding areas, in addition to servicing other parts of the nation.

14. Plaintiff and the putative class members were required by the Defendant to own or lease a truck and related equipment in order to perform drayage services as drivers for DNJ.

15. Although DNJ classifies Plaintiff and the members of the putative class as independent contractors, the behavioral and financial control manifested over the drivers by DNJ demonstrates that they are DNJ's employees. Plaintiff and the putative class are and/or were required to report to facilities maintained by DNJ in Illinois, supervised by DNJ management (which has the ability to discipline and terminate them), required to respond to DNJ dispatch (which gives them instructions), and required to complete and file paperwork related to the drayage services, generated by DNJ.

16. Plaintiff and the putative class members were required to use DNJ's communication and tracking system. DNJ sent dispatch instructions to its drivers through the People Net system and through text messages. DNJ deducted amounts from each driver's paycheck to cover the cost of the People Net system.

17. Plaintiff and the putative class members work full-time for DNJ, and the Contract requires them to own or lease a truck that meets specifications determined by DNJ. The Contract also specifies that the truck shall be used for DNJ business only, and that the Plaintiffs shall earn no revenue by use of the truck except on DNJ business.

18. Plaintiff and the putative class members perform work that is in the usual course of business of DNJ – i.e. they perform drayage services as drivers, and DNJ is engaged in the business of providing drayage services to its customers.

19. Plaintiff and the putative class members do not have an independently established trade or business in that they do not perform delivery services for anyone else. The drivers are dependent upon DNJ for their work, they do not negotiate with DNJ's customers regarding the rates charged for their services, and they do not contract with DNJ's customers independently.

20. DNJ retains the right to terminate Plaintiff and the putative class members if DNJ determines that they are not performing their work up to DNJ's standards, or if DNJ determines that they engaged in "improper conduct," at the discretion of DNJ.

21. DNJ deducts certain expenses directly from Plaintiff and the putative plaintiffs' checks without authorization at the time such deductions are made, including deductions as applicable for truck leases, insurance, and administrative costs, and compels Plaintiff and the putative plaintiffs to incur certain expenses which would normally be borne by an employer, such as for fuel costs and vehicle maintenance and repair costs.

22. DNJ frequently deducted such large amounts from Plaintiff's and the putative class members' paychecks, that the deductions amounted to over 25% of the total wages owed to the employee in that pay period.

23. DNJ frequently deducted amounts from Plaintiff's and the putative class members' paychecks, so much so that in certain weeks, the Plaintiff and upon information and belief members of the plaintiff class were not paid at all for the hours they worked in any given workweek.

24. Plaintiff and the members of the putative class regularly worked fourteen (14) hours per day for DNJ, five (5) days per week.

## CLASS ALLEGATIONS

25. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 for and on behalf of the following class (the "Plaintiff Class"):

> All persons who entered into Independent Contractor agreements or similar contracts for services with DNJ Intermodal Services, LLC, individually or on behalf of another entity, and personally provided drayage services as drivers pursuant to that agreement and/or contract in the State of Illinois at any time during the relevant statutory period, and who were not classified as employees of DNJ.

26. The members of the class are so numerous that joinder of all members of the Class is impracticable. Plaintiff believes that the Plaintiff Class numbers between fifty and one hundred individuals over the statutory timeframe.

27. Common issues of law and fact predominate the claims of the entire Plaintiff Class. Specifically, all claims are predicated on a finding that DNJ misclassified its drivers as independent contractors when they were in fact employees. In short, the claims of the named Plaintiff are identical to the claims of the class members.

28. The named Plaintiff is an adequate representative of the class because all potential plaintiffs were subject to DNJ's uniform practices and policies. Further, the named Plaintiff and the potential class plaintiffs have suffered the same type of economic damages as a result of DNJ's practices and policies.

29. Plaintiff will fairly and adequately represent and protect the interests of the Plaintiff Class. Plaintiff's counsel is competent and experienced in litigating large wage and hour class and collective actions.

30. Finally, a class action is the only realistic method available for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation makes it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be unjust and inequitable.

**COUNT I – Illinois Wage Payment and Collection Act**
**(Class Action against DNJ)**

31. Plaintiffs incorporate and re-allege paragraphs 1 through 30 as though fully set forth herein.

32. DNJ violated the IWPCA, 820 Ill. Comp. Stat. 115/1 *et seq.*, by failing to properly compensate Plaintiff and the members of the putative class for all hours worked.

33. DNJ violated the IWPCA, 820 Ill. Comp. Stat. 115/9, by making unlawful deductions from Plaintiff's and the putative class members' pay.

34. DNJ violated the IWPCA, 820 Ill. Comp. Stat. § 115/9, by routinely deducting greater than 25% of the net amount of Plaintiff's and the putative class members' payments.

35. Plaintiff, on behalf of himself and the putative class members, seeks all unpaid wages as well as reimbursement for all unlawful deductions taken by DNJ from his and the putative class members' pay.

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a) Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

b) Restitution for all deductions taken from Plaintiff's and the Class' pay;

c) Restitution for all of Defendant's operating expenses that Plaintiff and the Class were forced to bear;

d) Statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

e) Prejudgment interest;

f) Attorney's fees and costs; and

g) Any other relief to which the Plaintiffs and the Class members may be entitled.

## COUNT II – Fair Labor Standards Act
### (Class Action against DNJ)

36. Plaintiff incorporates and re-alleges paragraphs 1 through 30 as if fully set forth herein.

37. At any and all times relevant hereto, DNJ was, and still is, an "enterprise engaged in commerce" as defined by Section 3(s) of the Fair Labor Standards Act, 29 U.S.C. § 203(s).

38. DNJ was at all relevant times, and still is, an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

39. At any and all times relevant hereto, Plaintiff and members of the putative class were "employees" as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

40. Plaintiff and the members of the putative class are entitled by statute to compensation at a regular rate not less than the federal minimum wage for each hour worked during the three (3) years preceding the filing of this action.

41. DNJ, through its practice of deducting amounts from the paychecks of the Plaintiff and the members of the putative class, failed to compensate its employees at a rate equal to at least the federal minimum wage for each hour worked in certain weeks.

42. DNJ knew its obligations under the FLSA, but deliberately chose not to heed them. Thus, Defendant's failure to pay its employees at least the federal minimum wage for all hours worked is an intentional violation of the FLSA.

43. Defendant's acts, as described in this Count, were not based upon good faith or reasonable grounds.

44. As a direct and proximate result of Defendant's actions, back wages and liquidated damages are due to Plaintiff and the members of the putative class.

WHEREFORE, Plaintiff respectfully requests that the Court enter the following relief:

a) Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

b) Back pay equal to the amount of all unpaid minimum wages for the three (3) years preceding the filing of this Complaint;

c) Liquidated damages equal to the amount of unpaid back wages;

d) Prejudgment interest with respect to the total amount of unpaid minimum wage compensation;

e) Attorney's fees and costs incurred as a result of the Defendant's violation of the Fair Labor Standards Act; and

f) Any other relief to which the Plaintiff and the putative class members may be entitled.

**COUNT III – Conversion**
**(Individual Claim against DNJ)**

45. Plaintiff incorporates and re-alleges paragraphs 1 through 24 as though fully restated herein.

46. When Barrera began working for DNJ, he owned his own truck, a 1996 Freightliner, VIN 1FUYDXYB5TH598140.

47. Barrera was required to pay the repair costs for his truck, which he was contractually obligated to use only for work related to DNJ.

8

48. In or around August of 2014, Barrera's truck completely broke down. The cost of repairs was significant, so DNJ lent Plaintiff $4,267.91 to cover the cost of the repairs.

49. DNJ and Barrera entered into a promissory note, whereby DNJ would deduct $300 from each of Barrera's paychecks until the amount of the truck repair loan was repaid.

50. While the mechanic was working on the truck repairs, however, the mechanic became injured and could not complete the work. DNJ suggested that Barrera drive a DNJ-owned truck in the meantime, and Barrera agreed to do so.

51. During the time period in which Barrera drove the DNJ-owned truck, which lasted for a couple weeks in or around November and December of 2015, DNJ did not provide Barrera any compensation for the work he performed.

52. As DNJ could not deduct $300 from paychecks in which it provided Barrera no compensation, DNJ engaged in self-help and confiscated Barrera's truck on or around January 14, 2015.

53. At no time did DNJ demand full payment from Barrera of the amount owed it per the promissory note.

54. At no time did DNJ attempt to obtain the remainder of any payments owed it under the promissory note, through a collection agency.

55. As of the date of filing this Complaint, DNJ has refused to allow Barrera to access his truck, and has not returned the truck to Barrera's possession.

56. Barrera has clear ownership and the right to possession of his truck.

57. By depriving Barrera of his truck in the manner described above, DNJ wrongfully and willfully misappropriated Barrera's property their its benefit and to Barrera's detriment, in violation of Barrera's property rights.

58. As a proximate result of DNJ's act of conversion, Barrera has been deprived of his property rights and has been unable to obtain work as a driver. He has suffered significant damages, in an amount to be proved at trial.

59. The aforementioned acts of DNJ were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter the following relief:

a) Awarding Plaintiff possession of his truck;

b) Awarding Plaintiff back pay damages for amounts he could have earned had DNJ not deprived him of his property;

c) Awarding exemplary and/or punitive damages against the Defendant;

d) Awarding Plaintiff his reasonable attorneys' fees and costs; and

e) Such other and further relief as this Court deems just under the circumstances.


Dated: June 5, 2015                           Respectfully submitted,

Alejandro Caffarelli, #06239078               LUCIO BARRERA, individually and on behalf
Lorrie T. Peeters, #06290434                  of all others similarly situated,
Caffarelli & Associates Ltd.
224 N. Michigan Ave., Ste. 300                By: /s/ Alejandro Caffarelli
Chicago, IL 60604                                    Attorney for the Plaintiff
Tel. (312) 763-6880